UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD EATON, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>HANCOCK COUNTY, et al., )<br>)<br>    Defendants. ) | Civil No. 8-370-B-W |

**ORDER ON DEFENDANTS' MOTION *IN LIMINE***

Ronald Eaton, a plumber's helper - come carpenter - come lobster boat sternman, has sued a variety of Hancock County defendants alleging they caused him serious bodily injury as the result of a series of assaults that occurred first in a parking lot in Ellsworth, Maine, and then at the local county jail. The Hancock County defendants have filed a motion in limine (Doc. No. 79) seeking to exclude the testimony of two expert witnesses designated by the plaintiff. The motion has been referred to me. The first witness, Robert Strong, is an economist and has been designated to testify as to the present value of the lost future earnings of the plaintiff. The second witness, Peter Mazzaro, is a "vocational expert" and he is designated to testify regarding an "occupational analysis," that purports to characterize what Eaton might have earned in the years following his November 2006 injury. The witnesses, whose testimony is limited to damages, are not material to the case dispositive motions currently pending. I now grant the motion in limine to the extent the motion is directed at excluding the testimony of both witnesses' opinions and calculations based upon Eaton's hypothetical earning potential as a plumber's apprentice during the years 2007-2012 and as a master plumber during the years 2013-2027. However, to the extent that Strong and Mazzaro have proffered or intend to proffer opinions using the same basic methodology about lost future earnings based upon Eaton's

employment history, I deny the request to exclude their testimony in its entirety and leave for another day sculpting the exact contours of that testimony based upon revised figures and changed assumptions. In my view the subsidiary dispute about whether the "experts" should use Eaton's hourly wage on the date of the injury, his reported historical earnings, or his income tax returns as the basis for the calculations, is a dispute related to the relative weight a factfinder should give the ultimate opinion and does not support exclusion of those opinions through the testimony of these otherwise qualified experts.

## THE EXPERT OPINIONS

**Peter Mazzaro**

Peter Mazzaro is a vocational expert who has been designated to testify regarding an occupational analysis he performed of Eaton's expected earnings performance in the years following his November 2006 injury. Mazzaro reported that prior to Eaton's injuries, Eaton was earning $13.89 per hour as a plumber's helper. Mazzaro reported that Eaton had previously worked as a carpenter earning $15.18 per hour, and had also been self-employed as a sternman on a lobster boat and earned $57,060.00 per year. Finally, Mazzaro reports that Eaton's stated intention was to become a master plumber in five years' time, at which point he would have begun earning $67,110.00 +/- per year.[1]

Using these figures, Mazzaro contends that from the date of the injury in 2006 until 2012, Plaintiff's lost wages should be calculated either based on $13.89 per hour as a plumber's helper or $57,060.00 per year as a lobster fisherman. From 2012 through the year 2026, Mazzaro

---

[1] This projected yearly wage for a master plumber is a moving target. Mazzaro conceded in his deposition that using the most current data at that time, a master plumber in the metropolitan Bangor area earned an average of $46,470.00, (Mazzaro Dep. at 23), and in the nonmetropolitan area of northeast Maine, earned $44,290.00 (id. at 24). Mazzaro admitted that he did not conduct a labor market survey and that "that would have been the thing to do." (Id. at 32:1-7.) Mazzaro also admitted that he did not do any research in the Little Deer Isle geographic area (the area where the Plaintiff lives and works) to determine how many master plumbers there are, whether there is a market for any additional plumbers, or whether the market is saturated. (Id. at 32:8-16.)

2

assigns Eaton an annual wage of $67,100.00. With the exception of the projected wage as a master plumber, Mazzaro relied entirely upon Eaton's self reports regarding his past income.

**Robert Strong**

Robert Strong is an economist with the University of Maine. Strong estimated Plaintiff's wage progression beginning in 2007 and continuing through 2027. Strong explained he plugged variables into an equation, did calculations, and reported the results. More specifically, he considered two variables, wages and benefits, and then determined the sum total of the dollar value of the wages and benefits over the Plaintiff's projected working life, and then adjusted the figure to reach a present value. In order to do his calculations, Strong "relied heavily" on the report of the occupational analyst (Mazzaro). Specifically, he relied on Mazzaro's data regarding the Plaintiff's wages. Strong accepted Mazzaro's assumption that Eaton would become a master plumber and that this would change his income.

Strong assumed an annual salary of $28,336.00 in the year 2007 and increased that through 2012 to $34,674.00. This was based upon Mazzaro's report that Eaton earned $13.89 per hour, and then multiplying that amount by 2,040 hours, assuming fifty-one weeks of work per year. He was not provided with any verification of that income. Beginning in the year 2013, Strong reports a significant increase in Eaton's income to $78,872.00. Strong accepted as true that Eaton was in the process of completing a five-year apprenticeship type program, after which he would be employed as a master plumber.

Strong was given information from Mazzaro as to the average wage of master plumbers in Maine. Strong simply adjusted that wage based upon cost of living for years 2014 through 2027. Using those figures supplied by Mazzaro and Eaton, Strong built in an employer contribution to a retirement plan beginning in the year 2013. Strong agrees that his opinions

regarding the present value of Eaton's future income are only as good as the values attributed to the variables.

## DISCUSSION

Both sides and I agree that Maine law allows for the plaintiff to recover a sum for a lost earning opportunity in the appropriate circumstances. Snow v. Villacci, 2000 ME 127, ¶ 16, 754 A.2d 360, 365. (Def.'s Reply at 2, Doc. No. 125; Pl.'s Obj. at 5, Doc. No. 107.) The plaintiff's situation in that case, however, was markedly different from Eaton's situation. At the time of his injury, Snow was in month twenty of a twenty-five month program that, depending upon successful completion, would lead to Snow's certification as a financial consultant. Snow claimed that due to his injuries he was unable to successfully complete the program; the defendant claimed that his failure to complete the program was based upon his performance, unrelated to the injuries, and the Law Court said that dispute was a question of fact to be resolved by the factfinder. Snow, 2000 ME 127, ¶ 3, 754 A.2d at 362 & n.3. Snow, unlike Eaton, did not claim permanent or long term injuries caused by the defendants' conduct and the Law Court took great care to distinguish his case from a claim of lost earning capacity. Id., ¶ 10, 754 A.2d at 363. The Law Court rejected an absolute rule barring recovery for a lost earning opportunity, but acknowledged "the need for careful attention to the quality of the evidence by the trial court." Id., ¶ 13, 754 A.2d at 364.

> Federal Rule of Evidence 702 imposes an important gatekeeper function on judges by requiring them to ensure that three requirements are met before admitting expert testimony: (1) the expert is qualified to testify by knowledge, skill, experience, training, or education; (2) the testimony concerns scientific, technical, or other specialized knowledge; and (3) the testimony is such that it will assist the trier of fact in understanding or determining a fact in issue.

Correa v. Cruisers, 298 F.3d 13, 24 (1st Cir. 2002). See also Fed. R. Evid. 702; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589, 592 (1993) (discussing trial judge's role in

screening scientific expert testimony for reliability and relevancy); Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000) (setting forth three requirements of Rule 702).  In Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137 (1999) the United States Supreme Court made clear that the trial judge's "gatekeeping" obligation vis-à-vis expert testimony applies not only to "scientific" knowledge, but also to "technical" or "other specialized knowledge."  Id. at 141.  The trial court must remember that "[t]he ultimate purpose of the [expert evidence] inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue."  Cipollone v. Yale Indus. Prod., Inc., 202 F.3d 376, 380 (1st Cir. 2000); accord Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002) (quoting Cipollone).

>I conclude that the testimony of Mazzaro and Strong, to the extent they offer opinions about Eaton's hypothetical future loss of the opportunity to work as a master plumber, should be excluded.  The combination of this Court's role as a "gatekeeper" vis-à-vis expert testimony, coupled with the Maine Law Court's admonition that trial courts must maintain special vigilance when asked to admit "lost earning opportunity" testimony, leads me to the inevitable resolution of this motion.  The expert testimony is simply too speculative in nature and relies upon a hypothesis that was no more than "a hoped-for prospect."  Snow, 2000 ME 127, ¶ 16, 754 A.2d at 365.  The record, viewed most favorably to Eaton, establishes that he had been working as an unlicensed plumber's helper during part of 2006, was well regarded by the plumber he worked with, and had thought about getting an apprentice's license.  The defendants expand upon the notion of becoming a master plumber as follows:

> In order to become a master plumber, one must first obtain a trainee's license.  32 M.R.S.A. § 3501(3).  The Plaintiff never did so.  Next, one must either have two years with 4,000 hours of work in the field of plumbing as a licensed trainee plumber under the supervision of a master plumber, or 2,000 hours of work in the

5

> field of plumbing installation as a journeyman-in-training under the supervision of a licensed master plumber, along with one academic year of instruction in plumbing at a board-approved technical college in order to obtain a journeyman license. 32 M.R.S.A. § 3501(2). This the Plaintiff never did. Finally, in order to receive a master plumber license, an individual must have 2,000 hours of work in the field of plumbing installation as a journeyman plumber, or at least four years with 8,000 hours of work in the field of plumbing installation as trainee plumber under the supervision of a master plumber, and obtain a passing grade on a written examination. 32 M.R.S.A. § 3501(2-A). The record is clear that the Plaintiff had done none of this.

(Def.'s Mot. in Limine at 10, Doc. No. 79.)

Eaton does not refute the defendants' assertions about what it would take to become a master plumber. Nor does he suggest that he did anything more than work for a relatively brief time as a plumber's helper, an unlicensed position. On this record the "lost earning opportunity" is illusory and the testimony, expert or otherwise, of the value of the opportunity should be excluded. However, nothing in this order is intended to suggest a ruling upon testimony that might be construed as "loss of enjoyment of life" testimony that a plaintiff might offer concerning the impact of injuries upon his aspirations for his future life. Those types of decisions are, of course, entirely within the trial court's discretion. My order is simply that Mazzaro and Strong are barred from offering expert testimony about the monetary value of Eaton's putative "lost earning opportunity" as a master plumber. The evidence of such an opportunity is entirely too speculative on this record and the experts should not be allowed to give credence to the theory by assigning a monetary value to Eaton's future as a master plumber.

Finally, defendants appear to be suggesting that this Court should order that these experts not be allowed to present their opinions at all because the data provided to them by Eaton about his actual past earnings is unreliable. The defendants do not cite any authority, and I know of none, that would require an economist and a vocational expert to undertake a field investigation

to determine the truthfulness of the earning history provided by an individual before they formulate an opinion about lost future earnings. The trial judge will determine, either at trial or in a properly postured motion *in limine*, whether Eaton can produce sufficient predicate facts regarding his earnings history to warrant the experts' testimony.

## Conclusion

The defendants' motion *in limine* is granted in part and denied in part. To the extent it is denied, nothing in this ruling is intended to foreclose renewal of the objecton if Eaton does not produce sufficient evidence at trial to support the experts' proffered opinions.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

February 26, 2010                     /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge