UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RONALD EATON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-370-B-W |
| | ) |
| HANCOCK COUNTY, et al., | ) |
| | ) |
|     Defendants. | ) |

## RECOMMENDED DECISION

Ronald Eaton, a forty-seven year old man from Deer Isle, Maine, has sued the Hancock County Sheriff's Department, the Sheriff of Hancock County, numerous Hancock County corrections officers and patrol officers in their personal and "professional" capacities, and two individual citizens for a variety of civil rights violations and state law torts. There were originally eighteen named defendants in this lawsuit, but the City of Ellsworth and various of its police officers are no longer in the case (Doc. No. 31), reducing by five the total number of defendants. Eaton has filed a motion for summary judgment (Doc. No. 87) that is thirty-one pages long. It is accompanied by a one hundred thirty-one page statement of material fact that contains 1,043 paragraphs of "material fact." At least twelve pages of the statement of facts (¶¶ 948-1043) are devoted exclusively to damage issues, and although the motion seeks summary judgment "against all Defendants on all counts of Plaintiff's complaint" (Doc. No. 87), it concludes with the request that "a hearing on damages, both compensatory and punitive, [should] be scheduled for trial." (Pl.'s Mot. for Summary J. at 1, 31.) The Hancock County defendants have filed a response to the motion that includes a one hundred three-page response to the plaintiff's statement of facts. (Doc. No. 115.) I recommend that the court deny this motion. The Hancock County defendants filed their own motion for summary judgment (Doc. No. 82)

which will be addressed in a separate recommended decision. The two "civilian" defendants, Joshua Stevens and James Lepper, have not officially joined the fray although the parties did agree to the partial dismissal of some of the counts as to each of these defendants.

### THE COMPLAINT AND THE MEMORANDUM

Eaton's complaint consists of eight separate counts and, initially, all of the defendants were named in all counts. Count I alleges a Fourth Amendment violation by all defendants, and specifically claims that Hancock County and Sheriff William Clark are liable for the alleged Fourth Amendment violation because they "maintained and permitted official policies and customs and practices of permitting the occurrence of the types of wrong set forth." (Compl. ¶37, Doc. No. 1.) Count II alleged assault, false arrest, and false imprisonment by all defendants. Count III alleges negligent infliction of emotional distress. Count IV alleges a conspiracy under 42 U.S.C. § 1985(3). Count V alleges a conspiracy under 42 U.S.C. § 1983. Count VI is a claim for punitive damages. Count VII claims a due process violation under the Fourteenth Amendment to the United States Constitution. Finally, Count VIII is captioned as "negligence-Maine Tort Claims Act-assault." As defendants observe: "The first order of business is to ascertain, to the extent possible, exactly what it is that Plaintiff seeks summary judgment on." (Defs.' Response at 2, Doc. No. 114.) Although plaintiff purports to seek judgment as to all defendants and as to all counts, his actual argument does not attempt to explain each defendant's liability as to each count.

The first eleven pages of the thirty-one page memorandum are devoted to regurgitating the "material facts." Then, after stating the standard applicable to summary judgment motions, including an acknowledgement that all of the facts must be viewed in favor of the non-moving party, here the defendants, the plaintiff begins his legal argument in the middle of page thirteen.

Approximately four pages are then devoted to why the defendants are not entitled to qualified immunity. The next few pages (17-20) appear under the heading "There is Supervisory Liability in this action," although the discussion relates to the doctrine of municipal liability and the Monell/City of Canton line of cases. The next section is devoted to alleged Fourth Amendment violations and the claims of excessive force both at the restaurant parking lot and in the jail. The memorandum continues with a discussion of the "conspiracy" and makes this argument:

> Here, there is sufficient evidence <u>for a jury to decide</u> that the officers and individual Defendants engaged in a conspiracy to deprive Plaintiff of a right secured by the Constitution at the restaurant and the jail. His right to be free from excessive force was violated; his right to be free from harm was violated. <u>If</u> the experts, witnesses and documents are to be believed, then the officers have engaged in a cover up to deny Plaintiff rights secured by the Constitution.

(Pl.'s Mot. for Summary J. at 24 (emphasis added).) It is very difficult for me to understand how this argument moves a request for *summary judgment* forward. Plaintiff gives me no hint. The next portion of the memorandum is entitled "negligence" and particularly mentions the two civilians, James Lepper and Joshua Stevens, and suggests they were negligent as a matter of law in trying to assist the police officer who had become involved in a scuffle with the plaintiff at the restaurant parking lot. Section six of the memorandum addresses deliberate indifference to serious medical needs and appears to be directed at Corrections Officer Weaver and the claimed constitutional violation under the Fourteenth Amendment. Sections seven and eight address the tort claims related to assault, false arrest, false imprisonment and negligent infliction of emotional distress. Finally, section nine of the memorandum explains why plaintiff believes he is entitled to punitive damages both under Section 1983 and Maine tort law and contains this helpful citation:

> In <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2 632 (1983), we learn that "When the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to federally protected rights of others, punitive damages under Section 1983 are available. Evil motive or malice <u>is not easily resolved on summary judgment given the fact driven nature of the inquiry</u>." <u>Gual Morales v. Hernedez</u>, 579 F.2d 677, 680-81 (1st Cir. 1978).

3

(Id. at 28 (emphasis added).)

It appears that Eaton received a substantial shoulder injury as a result of these events and that he very much wants his day in court.  Final resolution of defendants' motion for summary judgment will determine whether or not a jury ultimately decides the factual disputes that may exist in this case.  However, plaintiff's attempt to file a preemptive motion for summary judgment has done nothing to advance that determination at all and has greatly delayed this court's ability to respond to the legal issues in a meaningful fashion.

### THE FACTS FROM THE DEFENDANTS' PERSPECTIVE

A point/counterpoint recitation of the statement of facts and responses thereto, with rulings on all of the various objections, requests to strike, and qualifications, would take another hundred pages and would provide the reader with a highly confused picture of this dispute.  Rather than attempt such an exercise, as is the customary practice in the context of a recommended decision, I am simply going to set forth a factual background, viewing the evidence in the light most favorable to the *defendants*, who are the non-movants in this contest.

Among the record materials is a transcript from a hearing on a motion to suppress conducted in state court.  (Doc. No. 85 & 86.)  Eaton relies on the transcript for most of his record citations in support of statements related to events that transpired in the parking lot of the China Hill Restaurant in Ellsworth.  Eaton was at China Hill with his girlfriend Cindy Furrow.  They had a disagreement and she left the restaurant without telling him.  He became angry and apparently disoriented when she did not return and proceeded to ask various people in the restaurant and outside if they had seen her.  Jason Lepper, who was then employed as a deputy for the Hancock County Sheriff's Department, was at China Hill with his family around 5:45 p.m. on November 5, 2006, celebrating a family birthday.  He saw an Ellsworth Police Officer, not in police uniform, speaking with an individual he did not recognize but who turned out to be

Ronald Eaton. Eaton appeared to be highly intoxicated, in Lepper's view. Eaton was standing by the bar and stated "this was f[']ing bullshit." He went outside the restaurant and then came back inside. By that time, Jason Lepper and his family were in the lobby and Eaton was also in the lobby, mumbling. Jason Lepper proceeded to follow Eaton because he suspected he might be drunk and he might try to drive away from the restaurant. He told his family members to call the Sheriff's Department because he wanted to prevent Eaton from driving away from the restaurant.

Lepper followed Eaton into the parking lot. At one point Eaton said to Lepper, "Where is my f[']ing car?" Eaton also grabbed Lepper by the lapels of his jacket. Eaton tried to yank open a locked exit door on the side of the restaurant in order to go back inside. Lepper was concerned there could be a problem if Eaton went back into the restaurant. At that point, Lepper told Eaton that he was a police officer and Eaton needed to stop what he was doing. Lepper did not take out any identification. Eaton advanced towards Lepper belligerently, in what Lepper described as a fighting stance. Lepper pushed Eaton against the building, grabbing his right wrist with Eaton facing the building and Lepper behind him. At this point Lepper advised Eaton that if he did not stop resisting his arm would get broken.

Lepper asked for assistance from his brother-in-law, Joshua Stevens, who was present at the scene. Lepper's father, James Lepper, also came out of the restaurant and began to assist. Eventually, Deputy Lepper and James Lepper forced Eaton to the ground and Deputy Lepper got him under physical control "because [he was] being a drunk a[]hole." Thereafter, Eaton was placed under arrest for disorderly conduct and criminal threatening by Shawn Willey of the Ellsworth Police Department who arrived at the scene at some point in time.

When Eaton was taken to the Hancock County Jail he claims he was further assaulted by various correctional officers and by Deputy Lepper. Eaton had no visible injuries such as blood

5

or bruises when he arrived at the jail. The corrections officials claim he was combative during the initial booking process and had to be physically restrained. They believed him to be intoxicated and placed him on an eight hour "hold" before completing the booking procedure. He was viewed as a potential suicide risk. The corrections officers warned Eaton that if he did not stop resisting he would be sprayed with OC spray, a mace-like substance. Because he continued to resist he was sprayed two times with the compound during the initial booking phase. After Eaton was placed in the holding cell he was yelling and banging repeatedly on the door.[1]

Eaton claims the corrections officers were deliberately indifferent to his serious medical needs. They say they had no idea of any medical problems until he complained and they then contacted a physician's assistant who prescribed ice and monitoring. According to the corrections officers, there were no obvious injuries. The corrections officers observed Eaton swing his arms and raise them over his head. They denied his request for an aspirin.

Hancock County has a Policy and Procedure Manual that includes a "Use of Force" official policy. All jail staff and law enforcement officers are trained on the policy. Furthermore, the official policy prohibits jail employees from diagnosing or treating illness and medicines can only be administered as directed by medical providers. The defendants' expert, James Garvey, opines that all of the jail's policies and procedures were appropriate.

## DISCUSSION

I group the defendants in order to address this unfortunate motion as expeditiously as possible. Although the following discussion focuses on the constitutional claims, the factual disputes in the record also defy an entry of summary judgment for the plaintiff on the related

---

[1] Eaton alleges that three corrections officers and a fourth man in fatigues came into the cell, handcuffed him, and maced and beat him. For purposes of *this* motion, I must ignore those allegations because defendants deny that any such incident occurred.

claims alleging violations of state law tort duties.  First, a few words on the summary judgment standard.

A party moving for summary judgment is entitled to judgment in its favor only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In reviewing the record for a genuine issue of material fact, the Court must view the summary judgment facts in the light most favorable to the nonmoving party and credit all favorable inferences that might reasonably be drawn from the facts without resort to speculation.  Merch. Ins. Co. v. U. S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998).  If such facts and inferences could support a favorable verdict for the nonmoving party, then there is a trial-worthy controversy and summary judgment must be denied.  ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002).

*James Lepper and Joshua Stevens*

Neither of these defendants filed a timely objection to the plaintiff's motion for summary judgment, although James Lepper did file an objection two days late.  Eaton claims in his motion that he is entitled to judgment against these two civilian defendants because, as a matter of law, they were negligent in assisting James Lepper during his confrontation with Eaton in the China Hill parking lot.  Eaton does not cite any Maine case that stands for the proposition that a bystander who assists a person he knows to be a law enforcement officer during a confrontation with a drunken arrestee is guilty of negligence as a matter of law.  Neither James Lepper  nor Joshua Stevens has presented any evidence in defense of the motion for summary judgment.  However:

> [A] district court may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days.  Rather, the court must determine whether summary

7

> judgment is "appropriate," which means that it must assure itself that the moving
> party's submission shows that "there is no genuine issue as to any material fact and
> that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.
> 56(c); see also Advisory Committee Note to Rule 56 ("Where the evidentiary matter
> in support of the motion does not establish the absence of a genuine issue, summary
> judgment must be denied even if no opposing evidentiary matter is presented.").

NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7-8 (1st Cir. 2002). I am not persuaded that Eaton has met his burden with his *ipse dixit* announcing "[t]his is the worst kind of negligence." (Pl.'s Mot. for Summary J. at 25.)

*Deputy Jason Lepper and Robert Morang*

These two officers were involved in the initial confrontation with Eaton in the parking lot at China Hill. Lepper initiated the encounter and Morang arrived on the scene after Eaton was on the ground and then placed him in handcuffs. I group the two officers because Graham v. Connor, 490 U.S. 386, 394-96 (1989), supplies the applicable legal standard for both, which is whether the officer's conduct was "objectively reasonable." Viewing the facts most favorably as to each officer, there is no reason why summary judgment should enter *against* either officer. (It is worth noting Eaton does not clearly articulate the theory of liability against Morang in either his motion for summary judgment or his response to defendants' motion for summary judgment.)

*Hancock County, Hancock County Sheriff's Department, William Clark, Carl Dannenberg*

Presumably Sheriff Clark and Jail Administrator Dannenberg are sued based on a theory of supervisory liability. Other than providing a heading entitled "supervisory liability," Eaton does not explain how he is entitled to summary judgment against these two. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A plaintiff must establish "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. Mere knowledge of a subordinate's alleged wrongful conduct does not establish Section 1983 liability for a supervisor absent some personal involvement in the alleged wrong by the

supervisor. Rather, there must be an affirmative link between the conduct of the supervisor and the constitutional deprivation experienced by the plaintiff. Sanchez v. Pereira-Castillo, 590 F.3d. 31, 49 (1st Cir. 2009); Maldonado v. Fontanes, 568 F.3d 263, 274-75 (1st Cir. 2009). Neither the Sheriff nor the Jail Administrator is alleged to have been present at the jail or to have participated in the mistreatment of Eaton. Summary judgment obviously cannot enter against them.

Hancock County and Sheriff Clark, in his official capacity, are sued under a theory of municipal liability. "Municipalities cannot be held liable for the constitutional violations of municipal employees pursuant to the doctrine of *respondeat superior.*" Welch v. Ciampa, 542 F.3d 927, 941 (1st Cir. 2008) (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)); see also Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002) (observing that suit against an official in an official capacity "is tantamount to a suit against the entity of which the official is an agent" and there must be a claim "that the entity followed a policy or custom" that was unconstitutional). Federal claims against a properly named municipal defendant will only be successful if that entity was responsible for an unconstitutional municipal custom or policy that caused the violation alleged. Welch, 542 F.3d at 941. Other than reciting the well-worn legal standard, Eaton does not explain why this factual record compels judgment to be entered in his favor and I can see no reason why summary judgment should enter in his favor.

*Ryan Haines, Heather Sullivan, Joshua Gunn, Crystal Hobbs, J Weaver*
*(also Jason Lepper & Robert Morang)*

Judgment is sought against these correctional officers for their conduct at the Hancock County Jail. Based upon the statement of fact, it appears that Eaton is also asserting that Deputy Jason Lepper and Robert Morang engaged in assaultive conduct at the jail as well as in the restaurant parking lot. What precise role these officers played in either assaulting Eaton or exhibiting deliberate indifference to his serious medical needs at the jail is not very well explained in the memorandum of law or the statement of facts. The other officers are jail corrections officers who had some sort of

9

contact with Eaton during his stay, but the theory of constitutional liability (or tort liability) is not very clear as to each individual officer.  For instance, the factual statements pertaining to Crystal Hobbs are found at paragraphs 566-586, but they don't clearly set forth a theory of liability.  Nor does Eaton's memorandum elaborate on her potential liability.  As to the other defendants, they deny the allegations, claiming to have used only that degree of force necessary, and, at best, a genuine issue of material fact exists as to whether any of these individuals have liability for any of the claims asserted.  Summary judgment should not enter against these defendants, either.

## CONCLUSION

Based on the foregoing, I RECOMMEND the court DENY this motion for summary judgment.  I would also recommend that Eaton's counsel re-read Local Rule 56(b) which requires that a motion for summary judgment be "supported by a separate, short, and concise statement of material facts . . . as to which the moving party contends there is no genuine issue of material fact to be tried."  Eaton's statement of fact is anything but short and concise. Moreover, it is exceedingly difficult to comprehend how he could believe that the facts essential to a finding of liability are undisputed on this record.  This is a serious case involving serious consequences for both plaintiff and the defendants.  It deserves better than a frivolous motion such as this motion for summary judgment, which is basically an ad hominem attack on the Sheriff and his deputies, devoid of meaningful legal analysis tied to any undisputed facts in the record.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 17, 2010