UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RONALD EATON,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        1:08-cv-00370-JAW
                                       )
HANCOCK COUNTY, et al.,                )
                                       )
            Defendant.                 )

## ORDER ON MOTIONS *IN LIMINE*

With trial looming, the Court grants in part, denies in part, and defers in part the parties' motions *in limine*.

## I.    PROCEDURAL HISTORY

With trial beginning on June 27, 2011 by Final Pretrial Order dated June 10, 2011, the Magistrate Judge allowed the parties to file motions *in limine* by June 15, 2011 with responses due no later than Friday, June 17, 2011.  *Report of Final Pretrial Conference and Order* at 4 (Docket # 202) (*Pretrial Order*).  The Magistrate Judge expressly stipulated that "no replies are allowed."  *Id.*  On June 15, 2011, Ronald Eaton filed a motion *in limine* seeking the Court's advance ruling on forty-five evidentiary issues.  *Pl.'s Mot.* in Limine (Docket # 204) (*Pl.'s Mot.*).  Defendant James Lepper responded on June 15, 2011.  *Def. James Lepper's Objection to Pl.'s (Second) Mot.* in Limine (Docket # 205) (*Lepper Opp'n*).  Defendants Jason Lepper, Ryan Haines, Joshua Gunn, and John Weaver replied on June 17, 2011.  *Objection of Defs. Jason Lepper, Ryan Haines, Joshua Gunn, and John Weaver to Pl.'s Mot.* in

Limine (Docket # 207) (*Defs.' Opp'n*).  Mr. Eaton filed a reply on June 17, 2011.  *Pl. Ronald Eaton's Reply to Objection of Defs. Jason Lepper, Ryan Haines, Joshua Gunn, and John Weaver to Pl.'s Mot.* in Limine (Docket # 208).  On June 15, 2011, Defendants Jason Lepper, Ryan Haines, Joshua Gunn and John Weaver filed a motion *in limine*.  *Defs. Jason Lepper, Ryan Haines, Joshua Gunn and John Weaver's Mot.* in Limine (Docket # 206) (*Defs.' Mot.*).  Mr. Eaton did not respond to the Defendants' motion.

Preliminarily, the Court strikes Mr. Eaton's Reply.  The Final Pretrial Order expressly provided that no replies were allowed and, simply ignoring the Court Order, Mr. Eaton filed a Reply without seeking leave to do so.  The Court cannot allow Mr. Eaton to so blatantly ignore a court's order.  Oddly, although Mr. Eaton filed what he could not, he did not file what he could: he did not respond at all to the Defendants' motion *in limine* and therefore the Court ruled on their motion, not knowing his position.

## II.    THE PLAINTIFF'S MOTION *IN LIMINE*

The Plaintiff's motion *in limine* demands pretrial rulings on forty-five evidentiary issues.  The subparts of the motion are more like bullet points than a typical legal memorandum.  For example:

> 16.  <u>No mention of Plaintiff's prior criminal record and jail time</u>.  Other incidents, particularly remote in time, should not be mentioned.  <u>Fed. R. Evid.</u> 403, 404(b), 405(b).

*Pl.'s Mot.* at 4.  Telegraphing an objection has the advantage of directness but it leaves the Court without context.  In number 16, the Court does not know any

details about Mr. Eaton's criminal history or his prior jail time to evaluate whether the conviction or convictions are admissible under the rules of evidence. A similar problem exists with each of the Plaintiff's requests for a ruling.

Mr. Eaton's motion retitles a virtually identical motion *in limine* he filed on November 24, 2009. *Pl.'s Mot.* in Limine (Docket # 57). While denying the first motion without prejudice as premature, on February 26, 2010, the Magistrate Judge warned Mr. Eaton not to file the motion he later filed. *Order on First Mot.* in Limine at 2 (Docket # 130). The Magistrate Judge wrote that she did "not expect Plaintiff to file forty-four separate motions, because much of this motion can be grouped into related issues." *Id.* True, Mr. Eaton has not filed forty-four motions; he has filed forty-five. Further, the Magistrate Judge pointed out to Mr. Eaton that he failed to cite a single case in support of his then forty-four requests for rulings. *Id.* at 1-2. She reminded Mr. Eaton that a motion *in limine* must be "limited to discrete legal and factual issues." *Id.* at 2.

The Court is nonplussed that despite clear warnings from the Magistrate Judge not to do so, Mr. Eaton has now filed a virtually identical motion *in limine* adding one issue, not citing any case law, and failing to group common issues. Although the Magistrate Judge did not issue a direct order, it takes an unusually strong-headed lawyer to so blithely ignore written judicial expectations. The Court is concerned that in ruling on the merits of this awkward motion *in limine*, it will encourage lawyers to go their own way in the face of judicial suggestion. Nevertheless, because the case is a serious one and the rights of the parties are

involved, the Court has done its best with limited time and limited facts to give the parties some guidance. At the same time, the Court urges Plaintiff's counsel to carefully read judicial directives and in the future, to at least attempt to follow the letter and the spirit of the orders.

### 1.    Plaintiff Entering Automobile at China Hill Restaurant

Mr. Eaton seeks a ruling preventing the Defendants from asking their experts to assume that he had either attempted to enter his car or had actually entered his car while he was in the China Hill Restaurant parking lot before his physical confrontation with Deputy Lepper and others. Mr. Eaton is concerned that defense counsel will pose a hypothetical not justified by the evidence. The Defendants responded that they do not intend to suggest that Mr. Eaton actually entered the car or tried to enter the car but that Deputy Lepper believed that Mr. Eaton might try to enter the car. As a basic matter, the Court agrees that defense counsel should not ask a hypothetical question which assumes facts which will not be admitted into evidence. The Court views the Defendants' response as concurring with this fundamental proposition. The Court GRANTS Mr. Eaton's motion on this issue.

### 2.    "So Drunk, So Strong" Evidence

Mr. Eaton seeks a ruling preventing the Defendants from attempting to establish that he was excessively drunk and excessively strong, factors which in their view justify their actions. The Defendants respond that they will attempt to provide an appropriate foundation for this evidence. The Court cannot at this stage know what the evidence will be and therefore defers ruling on this issue. However,

for guidance of the parties, whether Mr. Eaton appeared intoxicated to Deputy Lepper and other Defendants is likely admissible; whether he appeared strong seems less likely admissible without a proper foundation; and, whether he was likely to be stronger because he was intoxicated than he would have been sober, seems even less likely admissible. The Court DEFERS ruling on this issue.

### 3.    Assumed Evidence From Counsel

Mr. Eaton seeks a ruling preventing defense counsel from disparaging Plaintiff's counsel by cross-examining the Plaintiff's experts on the information they received from Plaintiff's counsel. The Defendants respond that it is appropriate for the jury to learn what underlying facts the Plaintiff's experts relied upon in arriving at their opinions. The Court agrees with the Defendants that if Plaintiff's counsel supplied his experts assumed facts upon which the experts relied in expressing their opinions, defense counsel has the right to explore the source and accuracy of those assumed facts. Based on past experience with counsel, the Court has every reason to anticipate that the attorneys will conduct themselves professionally and will avoid casting unprofessional aspirations against each other during the trial. With these parameters, the Court DEFERS ruling on this issue.

### 4.    Under Arrest

Mr. Eaton seeks a ruling preventing defense counsel from referring to whether he was under arrest before his physical arrival at the Hancock County Jail. He says that to describe the incident between Deputy Lepper and him as an arrest would be to mischaracterize what occurred. The Defendants respond that Deputy Lepper had placed Mr. Eaton under arrest outside the China Hill Restaurant. The

question of whether Mr. Eaton was under arrest is a contested factual and legal issue. The Court DENIES Mr. Eaton's request that the Defendants be forbidden to mention that from their perspective, Mr. Eaton was under arrest. Similarly, the Plaintiff will be able to argue that he was not.

### 5. "Damned If They Do; Damned If They Don't"

Mr. Eaton seeks a ruling that it is improper for defense counsel to contend that police officers are "damned if they do and damned if they don't" in certain situations. He asks the Court to order defense counsel and defense witnesses not to utter this phrase. The Defendants respond that although they are not likely to present the inquiry in such stark terms, they intend to ask their police procedures expert about the quandaries police officers sometimes find themselves in. Nothing about the phrase strikes the Court as so inflammatory or improper to exclude it. At the same time, the Court DEFERS ruling on this issue since it is unclear whether the facts will justify its use.

### 6. Deposition Testimony of Sgt. Heather Sullivan

Mr. Eaton says that during Sgt. Sullivan's deposition, defense counsel coached Sgt. Sullivan, causing her to change her testimony. Mr. Eaton seeks a ruling preventing defense counsel from referring to Sgt. Sullivan's altered testimony. The Defendants respond that Plaintiff's counsel is free to explore this issue on cross-examination if Sgt. Sullivan testifies at trial in a manner inconsistent with her deposition testimony. The Court DENIES Mr. Eaton's request for wholesale exclusion; the admissibility of Sgt. Sullivan's deposition testimony depends upon the evidence at trial and the content of the deposition.

### 7. Hank Dusenbery Discipline

Mr. Eaton seeks a ruling preventing defense counsel from asking his police expert, Hank Dusenbery, whether he was ever disciplined when he worked as a Maine State Trooper. Mr. Eaton asserts that "[q]uestions about Mr. Dusenbery's work as a Maine State Police Trooper and any discipline actions are not relevant and collateral." *Pl.'s Mot.* at 3. The Court readily overrules Mr. Eaton's request to prohibit any questions about former Trooper Dusenbery's work as a Maine State Trooper since they would go directly to his expertise. The Defendants respond that any discipline former Trooper Dusenbery received while employed by the Maine State Police is relevant "to the extent [it] . . . is related to his opinions in this case." *Defs.' Opp'n* at 3-4. Neither party revealed whether Mr. Dusenbery was, in fact, disciplined and, if so, the reason for and nature of the discipline, and the Court is not in a position to evaluate admissibility on this point. The Court DENIES in part the motion *in limine* to the extent Mr. Eaton seeks a general bar against any questions about Mr. Dusenbery's work experience as a Maine State Trooper and DEFERS in part the motion *in limine* to the extend Mr. Eaton seeks to bar any reference to discipline Mr. Dusenbery may have received as a Maine State Trooper.

### 8. Defense Counsel Comments About Officers Getting Sued for Frivolous Reasons

In a cryptic objection, Mr. Eaton objects to "any questions about an officer being sued if clothes removed and sprayed or not and get sued." *Pl.'s Mot.* at 3. He explains that defense counsel made "'mocking' comments about officers getting 'sued' for this or that; similar to the 'damned if you do, damned if you don't

7

comments. Such comments are inappropriate." *Id.* The Defendants respond by referring to their response to item five. *Defs.' Opp'n* at 4. As before, the Court DEFERS ruling on this issue.

**9.      Dispatcher Tape and Transcription**

Mr. Eaton seeks to secure a pretrial ruling on the admissibility of a dispatcher tape and transcription of the tape from the Hancock County Sheriff's Office. *Pl.'s Mot.* at 3. The Defendants say that it is inadmissible. The Court does not have any context with which to rule on this issue and therefore DEFERS ruling.

**10.      Documents Produced By Defendants**

Citing Rule 901, Mr. Eaton seeks a ruling that "[a]ll documents produced by Defendants should be admitted into evidence as regularly maintained business records." *Pl.'s Mot.* at 3. The Defendants object. *Defs.' Opp'n* at 4. The Court DEFERS ruling. Mr. Eaton has not specified which documents he contends should be admissible as business records; however, it is not true that simply because a party produces a document in discovery, it is admissible.

**11.      No Mention of Plaintiff's Cousin Dave Dyer or Others Allegedly Writing a Letter to Cammie Lepper or Writing on Traffic Signs About the Incident**

Mr. Eaton seeks a ruling excluding trial references to a letter and photographs "purporting to be from Plaintiff's cousin regarding negative comments or innuendo." *Pl.'s Mot.* at 3. The Court DEFERS ruling. Again, Mr. Eaton's objection is without context. The Court does not know what the letter contains and photographs show and does not know whether the Defendants will be able to link Mr. Eaton to this evidence and, if so, whether the contents justify admission.

### 12. Evidence that the Plaintiff Was on Social Security Disability and or Eligible for MaineCare insurance

Mr. Eaton seeks a ruling preventing any reference to the fact he receives Social Security disability and has been receiving MaineCare, Maine's Medicaid program. The Defendants respond that the admissibility of such evidence will depend on the purpose for which it is offered and other evidence at trial. *Defs.' Opp'n* at 5-6. The Defendants say that his receipt of social security disability is admissible to demonstrate their entitlement to an offset for his lost earning capacity claim and to show his lack of motivation for reemployment.

Generally, evidence of a plaintiff's receipt of social security disability benefits or medical insurance would not be admissible. *See* Donald G. Alexander, MAINE JURY INSTRUCTION MANUEL § 7-108 (2003 ed.) ("Mention of collateral source payments to the jury should be avoided"). Regarding the admissibility of social security disability, again, the Court is without significant context. For example, the Court does not know whether Mr. Eaton was receiving social security disability benefits before the China Hill altercation or began receiving those benefits after his alleged China Hill and County Jail injuries. *See Lovely v. Allstate Ins. Co.*, 658 A.2d 1091, 1092 (Me. 1995) (discussing the allotment of liability if the jury "is unable to apportion damages between the accident in question and a preexisting condition"). Regarding his eligibility for MaineCare, the Court doubts that evidence of a collateral source for medical payments is admissible. As to whether a plaintiff's claim is capped by the value of the medical service or the cost to the insurer, the Court is uncertain and before ruling on the question, expects guidance from counsel.

*See* Judge Hornby's Pattern Jury Instructions for Cases of Excessive Force § 6.1 (Updated Dec. 10, 2003); MAINE JURY INSTRUCTION MANUEL § 7-108 ("reasonable value, not exceeding the actual cost to the plaintiff").

The Court DEFERS ruling.

### 13.    Plaintiff's Alcohol Abuse or Being an Alcoholic

Claiming that the Defendants have sought to paint him as "a drunk or as drug dependent," Mr. Eaton seeks a ruling preventing evidence about his alcohol abuse or his being an alcoholic. *Pl.'s Mot.* at 3. Jason Lepper and the County Defendants respond that Mr. Eaton's alcoholism is relevant to his claim for damages and, in any event, his level of intoxication at the China Hill Restaurant is relevant to the issues in the case. *Lepper Opp'n* at 2-3; *Defs.' Opp'n* at 6.

First, Mr. Eaton's level of intoxication at the China Hill Restaurant and later that evening at the Jail is admissible. *Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (in an excessive-force action under section 1983, affirming a trial court's admission of evidence of intoxication because it "was relevant to the issue of the reasonableness of the plaintiff's conduct at that time); *Smith v. Hunt*, No. 08 C 6982, 2011 U.S. Dist. LEXIS 134, at *6-8 (N.D. Ill. Jan. 3, 2011) (allowing admission of the plaintiff's prior heroin use because "such evidence is relevant to [the plaintiff's] excessive force and medical care claims"). Second, the Court is skeptical about whether the Defendants may introduce evidence of his habitual use of liquor or drugs. FED. R. EVID. 404(a), 406. However, as James Lepper has pointed out, there is some authority that a plaintiff's alcoholism is admissible to disprove the scope of the plaintiff's causally-related damages. *Orlowski v. Eriksen*, No. 07 C

10

4015, 2009 U.S. Dist. LEXIS 66893 (N.D. Ill. Jul. 31, 2009). Before the Defendants attempt to introduce any such evidence, either on direct or cross-examination, they must approach the bench and obtain a specific ruling. The Court DENIES in part and DEFERS in part this part of the motion.

### 14.    No Evidence of Past Macings

Mr. Eaton seeks to prevent evidence that he had been maced in the past, except to the extent he was previously maced by Deputy Lepper. *Pl.'s Mot.* at 4. He says the other incidents were too remote in time and should not be mentioned. *Id.* James Lepper agrees that evidence of prior macings would be inadmissible to prove that while at the China Hill Restaurant, Mr. Eaton acted in conformity with his prior bad acts; yet, he seeks to reserve the right to introduce such evidence if it becomes admissible. *Lepper Opp'n* at 4. The County Defendants respond that even though prior bad acts are not admissible, they should not be precluded from developing a foundation to present evidence of other macings. *Defs.' Opp'n* at 7.

The Court DEFERS ruling. Preliminarily, the Court does not know the relevance of any past macings to the issues before the jury in this case and will have to be convinced that evidence of macings, either by Deputy Lepper or others, is admissible. Before either party seeks to introduce such evidence, they must approach the bench and receive a ruling.

### 15.    No Evidence of Past Altercations

Mr. Eaton seeks a ruling preventing evidence of his past fighting, including his reputation for being a "tough guy," his fighting in the military or with Bruce Setler, Don Jones, or "old altercations." *Pl.'s Mot.* at 4. James Lepper asserts the

same position on this issue that he asserted in response to the issue of past macings. *Lepper Opp'n* at 4.  The County Defendants acknowledge that prior bad acts are not admissible to demonstrate that Mr. Eaton has a propensity for fighting but they say that "such evidence may be admissible on matters such as routine, practice, modus operandi and others." *Defs.' Opp'n* at 7.  They claim that Mr. Eaton has a particular dislike for police officers and this may explain his violent reaction to Deputy Lepper at the China Hill Restaurant. *Id.*

The Court DEFERS ruling.  However, before the Defendants present any evidence of past altercations or Mr. Eaton's general dislike of police officers, they must approach the bench and receive a ruling.  The Court is concerned that such evidence would be marginally relevant, if at all, and would be substantially outweighed by its prejudicial effect. FED. R. EVID. 403, 404(b), 406.

### 16. Plaintiff's Prior Criminal Record

Mr. Eaton seeks a ruling excluding the admissibility of unnamed prior convictions on the ground that they are too remote in time. *Pl.'s Mot.* at 4.  James Lepper asserts the same position on this issue that he asserted in response to item 14. *Lepper Opp'n* at 4.  The Defendants respond that they are aware of two prior convictions—obstruction of government administration and escape—which they say may be admissible. *Defs.' Opp'n* at 7.  The parties have not given the Court enough information for it to determine whether Mr. Eaton's prior convictions are admissible under Rule 609(a) or (b).  FED. R. EVID. 609(a), (b).  The Court DEFERS ruling and will require counsel to approach the bench for a ruling before attempting to introduce evidence of prior convictions.

### 17.     Attorney Letters to Experts

Mr. Eaton seeks a ruling excluding evidence of his attorney's letters to his experts on the ground of work product. *Pl.'s Mot.* at 4. The Defendants say that these letters are admissible to the extent they show that the attorney was directing the expert and providing information which formed part of the basis for the expert's opinions. *Defs.' Opp'n* at 7-8. The Court agrees with the Defendants and DENIES the motion for wholesale exclusion. At the same time, the parties have not provided the Court with copies of the letters and the Court's Order depends upon the content of the letters.

### 18.     Evidence of the *Harriman* Case

Mr. Eaton seeks a ruling preventing the Defendants from denying evidence from the so-called Harriman case, specifically statements from a trooper and emergency medical technician about Mr. Harriman's injuries that contradict statements from the Hancock County Jail's Corrections Officers. *Pl.'s Mot.* at 4. The Defendants object, noting that the evidence is not relevant and in fact had been excluded in the Harriman case itself. *Defs.' Opp'n* at 8.

The Court agrees with the Defendants and DENIES the Plaintiff's motion. The Harriman case was a civil action in this Court that resulted in summary judgment against the Plaintiff and in favor of Hancock County defendants, a summary judgment that was affirmed on appeal to the First Circuit. *See Harriman v. Hancock Cnty.*, No. 08-122-B-W, 2009 U.S. Dist. LEXIS 53129 (D. Me. Mar. 31, 2009), *aff'd* 2009 U.S. Dist. LEXIS 72668 (D. Me. Aug. 17, 2009), *aff'd* 627 F.3d 22

(1st Cir. 2010). The Court does not understand why the Harriman case is relevant to Mr. Eaton's claim; Mr. Eaton's case must stand on its own merits.

### 19.    Strip Search Policies

Mr. Eaton seeks a ruling preventing the Defendants from denying the legal standards for strip searches. *Pl.'s Mot.* at 4. The Defendants object, saying that the Plaintiff waived any such issue. *Defs.' Opp'n* at 8.

Again, the Court is left without any context. The parties have not placed any factual basis before the Court in this motion. From the limited record before it in the summary judgment motion, the Court understands that after his arrest Mr. Eaton was strip searched at the Jail. *See Order Affirming the Magistrate Judge's Recommended Decision* at 11 (Docket # 151) ("At some point, Mr. Eaton was strip-searched and as he was strip-searched, he was maced").

The Court DEFERS ruling on this issue. First, the Court is unclear whether Mr. Eaton previously declared that the Jail strip search violated constitutional standards and the Court will seek guidance from counsel on the issue of waiver. Second, the Court is unclear whether a strip search of Mr. Eaton in the circumstances of this case would violate the Constitution. *See Oxley v. Penobscot Cnty.*, No. 09-cv-21-B-W, 2010 U.S. Dist. LEXIS 14895 (D. Me. Feb. 12, 2010), *aff'd* 714 F. Supp. 2d 180 (D. Me. 2010) (discussing whether a strip and visual body cavity search of an arrestee was violative of the arrestee's Fourth and Fourteenth Amendment rights).

### 20.    "Devil's Advocate" Questions to Dr. Strong

Mr. Eaton seeks a ruling prohibiting defense counsel from asking Dr. Strong, his economic expert, to play "devil's advocate" against his own testimony. *Pl.'s Mot.* at 4. Mr. Eaton contends that in order to ask his expert to consider the other side of the case, the Defendants must first designate him as their expert witness. *Id.* The Defendants object. *Defs.' Opp'n* at 8-9. The Plaintiff's position is novel but without authority. The Defendants have the right to engage in a vigorous cross-examination of Dr. Strong and the Court will not interdict them from the use of specific terms in doing so. The Court DENIES the Plaintiff's motion.

### 21. Wage Loss Questions to Peter Mazzaro

Mr. Eaton seeks a ruling prohibiting defense counsel from asking Peter Mazzaro, his vocational rehabilitation expert, wage loss questions. *Pl.'s Mot.* at 5. He notes that defense counsel "made sport" of Dr. Strong and Peter Mazzaro when Mr. Mazzaro assessed his wage loss, and he says that the tactic was "argumentative and unnecessary." *Id.* The Defendants respond that the issue is unclear and there is no ground for preventing them from cross-examining Peter Mazzaro and Dr. Strong. *Defs.' Opp'n* at 9. The Court agrees with the Defendants and DENIES the Plaintiff's motion *in limine*.

### 22. Sheriff William Clark's Statement to the Bangor Daily News

Mr. Eaton asks for a ruling prohibiting the Defendants from denying the accuracy of Sheriff William Clark's statement to the Bangor Daily News following Mr. Eaton's acquittal of criminal charges. *Pl.'s Mot.* at 5. Citing Rule 902(6), he says that the Bangor Daily News is "self-authenticating." *Id.* In response, the Defendants point out that they have raised the issue of the admissibility of Sheriff

Clark's statement in their motion *in limine* and they observe that even if the newspaper article is self-authenticating, it is not self-admitting. *Defs.' Opp'n* at 9. They say Sheriff Clark is free to either admit or deny the accuracy of what others say or report that he said. *Id.*

Mr. Eaton is correct that a newspaper may be self-authenticating under Rule 902(6). FED. R. EVID. 902(6), *but see New England Mut. Life Ins. Co. v. Anderson*, 888 F.2d 646, 650 (10th Cir. 1989). However, the contents of the article are likely hearsay and inadmissible to prove the truth of the statements. *Horta v. Sullivan*, 4 F.3d 2, 8-9 (1st Cir. 1993). The Court DENIES the Plaintiff's motion on this point.

### 23.   Child Support Arrearage Evidence

Mr. Eaton requests that the Court prevent the Defendants from questioning him about his arrearage in making child support payments. *Pl.'s Mot.* at 5. The Defendants agree that such evidence would be of "marginal relevance" but ask the Court to defer ruling since evidence of arrearages may explain why he has initiated this law suit. *Defs.' Opp'n* at 9. The Court agrees with the Plaintiff and GRANTS his motion. The probative value of such evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. FED. R. EVID. 403.

### 24.   William Gaut's Statements

Mr. Eaton seeks an order prohibiting the Defendants from denying that a man named William Gaut authored a number of statements that were published on the internet or on television. *Pl.'s Mot.* at 5. The Defendants respond that even if some of these statements are self-authenticating, they are inadmissible and

furthermore that Mr. Gaut is free to admit or deny the statements. *Defs.' Opp'n* at 9-10.

The Court DEFERS ruling on this issue. The Court is at an utter loss as to what this dispute is about.

### 25. Acquittal

Mr. Eaton asks the Court to prohibit the Defendants from denying that on September 19, 2007, Justice William Broderick entered a judgment of acquittal in *State v. Ronald Eaton*. *Pl.'s Mot.* at 5. The Defendants acknowledge that Justice Broderick acquitted Mr. Eaton but claim this fact is irrelevant. *Defs.' Opp'n* at 10. The Court addresses this question in response to the Defendants' motion *in limine*. *See infra* Part III.4.

### 26. Personnel Files

Mr. Eaton seeks an order preventing the Defendants from objecting to the admissibility of the personnel files of Defendants Sullivan, Hobbs, and Haines. *Pl.'s Mot.* at 5. The Defendants acknowledge that "certain documents contained in their personnel files, or at least the subject matter of those documents, may be relevant if otherwise admissible." *Defs.' Opp'n* at 10. However, they say that their personnel files contain documents that are not relevant, "[d]epending upon what the document is and why it is offered." *Id.*

Again, the Court does not know what the personnel files of these Defendants reveals and what probative value they may contain. It appears that the main point of the Plaintiff's motion is to prevent the Defendants from claiming that their personnel files are not business records under Rule 803(6). *See* FED. R. EVID. 803(6).

The Defendants appear to agree that they are business records. Nevertheless, even if admissible as business records, the contents of the personnel files must still be otherwise admissible. The Court GRANTS in part and DENIES in part the Plaintiff's motion on this point. To the extent the personnel records are records of regularly conducted activity, they are admissible under Rule 803(6); however, the admissibility of the records is still governed by other rules of evidence, the provisions of which the Plaintiff must still meet.

### 27. Opinions of Hank Dusenbery

Mr. Eaton seeks an order prohibiting the Defendants from objecting to Mr. Dusenbery's opinion and his use of twelve cited learned treatises and articles. *Pl.'s Mot.* at 6. The Defendants acknowledge that they have not challenged Mr. Dusenbery's expertise but reserve the right to object to non-disclosed expert opinions. *Defs.' Opp'n* at 10-11. On the question of Mr. Dusenbery's expert testimony generally, the Court GRANTS the Plaintiff's motion. Regarding the listed articles, the fact that Mr. Dusenbery reviewed articles in forming his expert opinion does not make the articles themselves admissible, unless there is a separate basis for their admission. FED. R. EVID. 703. The Court is not now in a position to evaluate the admissibility of the listed articles. The Court therefore DEFERS ruling on this part of the Plaintiff's motion.

### 28. Cause of Mr. Eaton's Injury

Mr. Eaton's item 28 reads:

<u>No evidence at trial to contradict Dr. Williamson's testifying that Ronald Eaton's injury was a twisting injury, not self-inflicted and not caused by his running into a door and caused by his arms being pushed</u>

up behind his back. (Dr. Williamson deposition @ pg. 56, lines 4-25; pg. 57, lines 1-25; pg. 58, lines 1-24). There are no contradictory experts on the issue that Plaintiff suffered a <u>twisting</u> injury and it was <u>not self-inflicted</u>.

*Pl.'s Mot.* at 6. The Defendants respond by acknowledging that they have not designated a medical expert but they maintain their right to cross-examine Dr. Williamson, including the right to question him about other potential causes of Mr. Eaton's shoulder injury. *Def.'s Opp'n* at 12.

The Court is not clear what Mr. Eaton is seeking but it assumes he is asking the Court to prohibit the Defendants from cross-examining Dr. Williamson about possible causes of Mr. Eaton's shoulder injury other than the China Hill Restaurant altercation. If so, the Court DENIES the motion.

### 29. "Litigation Syndrome"

Mr. Eaton asks the Court to prohibit the Defendants from contradicting Dr. Williamson's testimony that he does not have "litigation syndrome." *Pl.'s Mot.* at 6. James Lepper and the County Defendants object. *Lepper Opp'n* at 4; *Def.'s Opp'n* at 12. The Court DENIES the Plaintiff's motion on this point.

### 30. Dr. Williamson's Causation Testimony: Post-Incarceration Activity

After Mr. Eaton entered the Hancock County Jail, the corrections officers apparently say that they saw him, in Mr. Eaton's words, "banging his hands, arms and shoulders." *Pl.'s Mot.* at 6. Dr. Williamson apparently testified that Mr. Eaton could not have performed that activity once he sustained his shoulder injury. *Id.* Mr. Eaton asks the Court to prohibit the Defendants from speculating or from allowing their lawyers to "'testify' on their false 'hunches.'" *Id.* Mr. Eaton's claim,

in effect, is because he testified that he injured his shoulder during the altercation at China Hill and his surgeon agrees that his injury is consistent with his description of the altercation, the Defendants must be forbidden from asking any questions to the contrary to his surgeon. The Defendants respond that if the Plaintiff engaged in this activity at the Jail, it is logical to conclude he did not injure his shoulder at China Hill. *Defs.' Opp'n* at 12.

The Court agrees with the Defendants that they should be allowed to cross-examine Dr. Williamson on the foundation for his causation opinions and DENIES Plaintiff's motion on this point.

### 31. Dr. Williamson's Causation Testimony: High Energy Injury

Mr. Eaton's thirty-first issue is a variant of the thirtieth. He contends that the Court should not allow any cross-examination of Dr. Williamson's opinion that Mr. Eaton's shoulder injury is consistent with a high energy injury consistent with twisting force and is not consistent with banging against a door. *Pl.'s Mot.* at 7. The Defendants object. *Defs.' Opp'n* at 12-13. For the reasons stated in Part II.31, *supra*, the Court DENIES the Plaintiff's motion *in limine* on this point.

### 32. Dr. Williamson's Causation Opinion: Ripped Arm Off

Mr. Eaton's thirty-two is another variant of thirty and thirty-one. The Court DENIES the Plaintiff's motion *in limine* on this point.

### 33. Jason Lepper and the Charging Decision

Mr. Eaton seeks a pretrial order preventing the Defendants from denying that Jason Lepper made the decision to charge him with disorderly conduct and criminal threatening. *Pl.'s Mot.* at 7. The Defendants admit that Jason Lepper

thought he had probable cause to arrest Mr. Eaton, that he undertook to effect the arrest, and that he told the officers who arrived at the scene what charges should be brought against Mr. Eaton. *Defs.' Opp'n* at 13.

Although it appears there is no disagreement on these issues, the Court will not order the Defendants that they or their witnesses must testify to anything in particular. The Court DENIES the Plaintiff's motion on this point.

### 34. Jail Administrator Dannenberg's Knowledge of Jail Policy on Excessive Force

Mr. Eaton asserts that Jail Administrator Dannenberg testified that he did not know what the Jail's excessive force policies were in 2006 and he requests a Court order, prohibiting Mr. Dannenberg from denying his prior testimony. *Pl.'s Mot.* at 13. The Defendants object, noting among other things that the testimony relates to the supervisory liability claims that the Court dismissed on summary judgment. *Defs.' Opp'n* at 13. The Court cautions Plaintiff's counsel that he must not pursue at trial claims that the Court has concluded may not proceed forward.

Furthermore, if this proposed testimony is relevant to a pending cause of action (and the Court doubts it is), the Court would not issue an order, requiring Mr. Dannenberg to testify to anything in particular. The Court DENIES the Plaintiff's motion *in limine* on this point. If Mr. Dannenberg testifies at trial to something different than his prior sworn testimony, he may be subject to cross-examination on his conflicting testimony.

### 35. Dannenberg's Testimony on Excessive Force Training

Mr. Eaton's thirty-fifth issue is a variant of his thirty-fourth. The Court will not order Mr. Dannenberg to testify to anything in particular. The Court DENIES the Plaintiff's motion *in limine* on this point.

### 36. Dannenberg's Testimony on Bailable Offense

Mr. Eaton's thirty-sixth issue is a variant of his thirty-fourth and thirty-fifth. The Court will not order Mr. Dannenberg to testify to anything in particular. The Court DENIES the Plaintiff's motion *in limine* on this point.

### 37. Dannenberg's Testimony on Review of Personnel Files

Mr. Eaton's thirty-seventh issue is a variant of his thirty-fourth, thirty-fifth, and thirty-sixth. The Court will not order Mr. Dannenberg to testify to anything in particular. The Court DENIES the Plaintiff's motion *in limine* on this point.

### 38. The Joanie Banks' Notice of Claim

Mr. Eaton seeks a court order, preventing Hancock County from denying that before it received the Harriman and Eaton claims, it received a Notice of Claim from a woman named Joanie Banks. *Pl.'s Mot.* at 7. The Defendants object. *Defs.' Opp'n* at 14. The Court is aware of no evidentiary basis for the admission of Ms. Banks' claim against the current individual defendants and again cautions Plaintiff's counsel that he must not seek to admit evidence that is relevant, if at all, to dismissed causes of action. The Court DENIES Plaintiff's motion *in limine* on this point.

### 39. Dannenberg Knowledge of Force Training

This issue is nearly identical to issues thirty-four, thirty-five, thirty-six and thirty-seven and the Court DENIES Plaintiff's motion *in limine* on this point.

### 40. David Harriman Investigation and Discipline

Mr. Eaton seeks a court order, preventing the Defendants from denying that after Mr. Harriman's alleged injuries, Hancock County neither investigated his claim nor disciplined any correction officers. *Pl.'s Mot.* at 8. The Defendants object on the ground of relevance. *Defs.' Opp'n* at 14. The Court agrees with the Defendants and DENIES Plaintiff's motion on this point.

### 41. Ronald Eaton Investigation and Discipline

The Court addresses this issue in the context of the Defendant's motion *in limine. See infra* Part III.6.

### 42. Dr. Murnick's Testimony About Mr. Eaton's Drug Use

Mr. Eaton says that when the Defendants deposed Mr. Eaton's primary care physician, Dr. Murnick, they attempted to paint Mr. Eaton as drug dependent, and he seeks a court order preventing the Defendants from asking similar questions at trial. *Pl.'s Mot.* at 8. James Lepper notes that Dr. Murnick testified that he believes Mr. Eaton is now "physiologically dependent on (or 'habituated' to) narcotics and that he would need to be weaned from narcotics if/when there was a decision to discontinue their use." *Lepper Opp'n* at 4. The County Defendants observe that Dr. Murnick prescribed medication for pain that Mr. Eaton contends is related to the China Hill and Hancock County Jail injuries. *Defs.' Opp'n* at 15. The Court is aware of no basis for preventing the Defendants from cross-examining the treating physician about the Plaintiff's post-accident drug use. The Court DENIES the Plaintiff's motion on this point.

### 43. Public Intoxication

Mr. Eaton seeks an order prohibiting the Defendants from denying that public intoxication is not a crime in the state of Maine. *Pl.'s Mot.* at 8. The Defendants respond by noting that Mr. Eaton has not provided a citation for his proposition and then observe that assuming its accuracy, "it should not be a problem for Plaintiff because, contrary to the testimony of every other witness who was present, he says he was not drunk at the time of the events outside the China Hill Restaurant." *Defs.' Opp'n* at 15.

The Court DENIES the Plaintiff's motion *in limine* on this point. Mr. Eaton may be correct that public intoxication is no longer a crime in the state of Maine; however, the relevancy of that assertion is whether Deputy Lepper had probable cause to believe that Mr. Eaton was committing a crime simply because the Deputy perceived that Mr. Eaton was intoxicated. To generate that issue, Mr. Eaton is free to ask Deputy Lepper whether public intoxication is a crime in Maine, and as in other matters, the Court will not direct Deputy Lepper how to testify. If Deputy Lepper acknowledges that intoxication is not a crime, there will be no issue. If Deputy Lepper testifies that intoxication is a crime, the Court will expect Mr. Eaton to present authority for the proposition that intoxication is not a crime in Maine. The Court suspects that public intoxication was deemed a crime for much of Maine's history but at some point, the statute was repealed in favor of decriminalizing alcoholism. However, the Court will not do Mr. Eaton's legal research for him and if he wishes the Court to act, he has the obligation to provide the Court with authority to do what he wishes. Regarding the Defendants' response, the Court notes that the

question is not whether Mr. Eaton perceived he was intoxicated but whether Deputy Lepper did and, if so, whether he thought he was justified in arresting him for his level of intoxication.

### 44. Demand for Judgment Against the Defendants

Mr. Eaton's forty-fourth item reads:

> To prevent the Defendants from denying at trial that Jason Lepper used excessive force in his accosting Ronald Eaton in the China Hill Restaurant, that the accosting was illegal, there was no basis for him to accost Ronald, and that the use of excessive force resulted in the injuries suffered by Ronald as reported by Dr. Williamson.

*Pl.'s Mot.* at 44. This is an improper request. It amounts to a demand for judgment in the guise of a motion *in limine*. There is no basis to grant such a motion. Mr. Eaton well knows that these are precisely the factual issues that are in dispute and that must be resolved by a jury. The Court DENIES Plaintiff's motion *in limine* on this point.

### 45. 30-A M.R.S. Section 402

Mr. Eaton asks for the Court to prevent the Defendants from asserting 30-A M.R.S. section 402 as an affirmative defense. *Pl.'s Mot.* at 8-9. This issue arose in James Lepper's Final Pretrial Memorandum in which he cited the Maine statute and contended that since he was required under Maine law to assist his brother who was acting as a law enforcement officer in the execution of official duties, he cannot be deemed a joint tortfeasor and is entitled to qualified immunity. *Def. James Lepper's Pretrial Mem.* at 3 (Docket # 197).

Mr. Eaton contends 1) that James Lepper waived the issue by not raising it as an affirmative defense; 2) that since Mr. Eaton did not actually commit a

criminal offense, this section does not apply; 3) that Deputy Lepper was not on duty as a law enforcement officer and therefore section 402 does not apply; and 4) section 402, if it applies, does not grant qualified immunity to a passerby who assists a law enforcement officer perform official duties. *Pl.'s Mot.* at 8-9. The County Defendants have not responded because this issue does not apply to them. *Defs.' Mot.* at 15.

James Lepper responds that he is not asserting 30-A M.R.S. section 402 as an affirmative defense but as a proposed jury instruction. *Lepper Opp'n* at 5. Mr. Lepper also says that section 402 provides civilians, such as himself, with qualified immunity when, as directed by law, they assume official duties. *Id.* For support Mr. Lepper cites *Mejia v. City of New York*, 119 F. Supp. 2d 232, 268-69, 270 (E.D.N.Y. 2000).

Whatever the resolution of this matter, it is apparent that the parties are arguing about law, not evidence. Therefore, the Court DENIES the Plaintiff's motion *in limine* on this issue.

## III. THE COUNTY DEFENDANTS' MOTION *IN LIMINE*

In their motion *in limine*, the County Defendants raise whether Mr. Eaton should be allowed to present evidence on the following issues: 1) evidence on issues of municipal liability, supervisory liability, and/or vicarious liability; 2) witnesses not previously identified; 3) evidence about Deputy Lepper's conclusion of employment with the Maine State Police; 4) the acquittal of Ronald Eaton; 5) statements by Sheriff Clark to the effect that he stands by Deputy Lepper and disagrees with the verdict; 6) evidence about the absence of an internal affairs

investigation or discipline of the County Defendants; 7) evidence about the alleged strip search; and 8) evidence of past conduct by the County Defendants. *Defs.' Mot.* at 1-2. Mr. Eaton failed to respond to this motion.

### 1. Municipal and Supervisory Liability

On April 16, 2010, the Magistrate Judge issued a Recommended Decision, recommending that the Court grant summary judgment on the municipal and supervisory liability claims. *Recommended Decision* at 27-32 (Docket # 138). On September 28, 2010, this Court adopted and affirmed the Recommended Decision and dismissed as party Defendants Robert Morang, Crystal Hobbs, Heather Sullivan, Hancock County, the Hancock County Sheriff's Office, Sheriff William Clark, and Jail Administrator Carl Dannenberg. *Order Affirming the Magistrate Judge's Recommended Decision* at 37.

The remaining County Defendants are concerned that some of Mr. Eaton's listed witnesses and some of the issues he raised in his motion *in limine* are directed exclusively toward proving the municipal and supervisory liability theories of recovery that have been dismissed. *Defs.' Mot.* at 1-2. They focus on witnesses David Harriman, Jenny Sheriff, Gregory Mitchell, Forster Kane, and Joni Banks, and they say that none of these witnesses has any personal knowledge of the facts in this case and the only purpose in their testimony would be to establish the County's policy or custom of excessive force.

As Mr. Eaton has not responded to this motion, the Court cannot guess his position. Accordingly, the Court is scheduling a conference of counsel to clarify this and other issues. The Court DEFERS ruling until the conference.

### 2.     Non-Disclosed Witnesses

The County Defendants say that Mr. Eaton listed seventeen trial witnesses, none of whom was disclosed during discovery. *Defs.' Mot.* at 3-5. The Court is not in a position to know the Plaintiff's position as to whether these witnesses were disclosed and, if not, why not. The Court DEFERS ruling on this issue until the conference of counsel.

### 3.     Jason Lepper Termination

The County Defendants state that Plaintiff's counsel has represented that he has evidence that Jason Lepper was terminated from the Maine State Police and the reason for his termination. *Id.* at 5. The County Defendants say they have no evidence to support Mr. Eaton's claim and are concerned that Plaintiff's counsel will refer to this unknown evidence in his opening statement or before the jury during trial. *Id.* As the County Defendants have not informed the Court what the Plaintiff contends was the reason for the termination and the Plaintiff has not responded to the motion, the Court will discuss this issue with counsel at the upcoming conference. The Court DEFERS ruling.

### 4.     Acquittal

Citing *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249 (1st Cir. 1996), the County Defendants say that Mr. Eaton's later acquittal should not be allowed into evidence. *Defs.' Mot.* at 6. The *Roche* Court opinion contains language that suggests a later conviction is not relevant to the determination of probable cause, but it does not expressly state that the later acquittal is entirely inadmissible. *Roche*, 81 F.3d at 254-55. However, the Court is unclear whether the later acquittal

is admissible for other purposes with limiting instructions. For example, perhaps the jury should be informed of the acquittal so that it does not assume that the Plaintiff has been unable to find employment because he was convicted. The Court will seek further guidance from counsel and therefore DEFERS ruling.

### 5. Sheriff Clark Statements

The County Defendants ask that the Court exclude any post-verdict statements to the press by Sheriff William Clark. *Defs.' Mot.* at 7. They say that Sheriff Clark's statements would be relevant only to the municipal or supervisory claims and since those claims have been dismissed, Sheriff Clark's reaction to the acquittal is not relevant and highly prejudicial. *Id.* The Court will discuss this issue at the conference of counsel and therefore DEFERS ruling.

### 6. Internal Affairs Investigation and Discipline

The County Defendants object to any evidence that Hancock County did not undertake an internal investigation of this incident and did not discipline any of the County Defendants for their actions involving Mr. Eaton. *Defs.' Mot.* at 8. The Court will discuss this matter at the conference of counsel and therefore DEFERS ruling.

### 7. Strip Search

The County Defendants move to exclude any evidence that Mr. Eaton was strip searched at the Jail following his arrest. *Defs.' Mot.* at 8-9. They say that the Court granted summary judgment on claims where the strip search issue could have been raised and that the Plaintiff has waived the right to press an improper

strip search claim by failing to press it until now. *Id.* The Court will address this issue at the conference and therefore DEFERS ruling.

### 8. Similar Past Conduct by County Defendants

The County Defendants seek to exclude any evidence that they engaged in similar conduct in the past. *Def.'s Mot.* at 9-10. The Court will address this issue at the conference and therefore DEFERS ruling.

## IV. CONCLUSION

The Court GRANTS in part, DENIES in part, and DEFERS ruling in part the Plaintiff's Motion *in Limine* (Docket # 204) and the Court DEFERS ruling on the County Defendants' Motion *in Limine* (Docket # 206).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd day of June, 2011